[Civ. No. 8359. Third Dist. Feb. 1, 1955.]

LEO A. YATES et al., Respondents, v. ORVILLE J. KUHL et al., Appellants.

Arthur C. Huston, Jr., Duggan, Smith & Lawlor and Eugene K. Lawlor for Appellants.

Desmond, Miller & Artz for Respondents.

PEEK, J.—This is an appeal by defendants from a judgment awarding plaintiffs damages for the alleged wrongful interference by defendants with the flow of water necessary for irrigation and flooding of plaintiffs' land.

On February 7, 1949, the defendants granted to plaintiffs certain land in Colusa County. The land so conveyed was bounded on the north, south and west by land owned by defendants. The deed additionally granted to plaintiffs the use of water for agricultural and hunting purposes without

charge so long as defendants were not obligated to pay for the water so used. The water was obtained from two sources: (1) by gravity flow from an artificial drain owned by Reclamation District 2047, and (2) from an artificial ditch known as Sublateral (F) belonging to the Maxwell Irrigation District. Both the ditch and the drain adjoin plaintiffs' and defendants' land at a point where there was constructed a concrete flashboard controlled weir in the 2047 drain which is partly on plaintiffs' property and partly on that of defendants. Plaintiffs constructed duck blinds on their property and sold hunting privileges to persons desiring to hunt thereon. In order to so use the area it was absolutely necessary that it be flooded with water during the shooting season.

This is the second of two cases. The primary charge in the first action, which was filed on November 9, 1949, was that defendants had unlawfully cut off plaintiffs' supply of water. The action was tried on December 15 and 16 and a formal judgment entered on January 12, 1950. It was substantially the same as that which the court gave orally on December 16 at the conclusion of the trial. The findings in that proceeding, among other things, were that for many years water from the weir had been running into the sublateral from which it was diverted to plaintiffs' land; that it was therefore necessary for defendants to maintain the stop box on their property; that plaintiffs were entitled to the maintenance thereof and to the use of the weir and their pro rata share of the water for irrigation and hunting purposes; that defendants should continue to so regulate said weir in such a manner that all users of the water receive their pro rata share; that plaintiffs were entitled to have maintained an earthen dam which was used to divert water to and drain water from plaintiffs' land; that defendants had caused the dam to be destroyed; that as a result plaintiffs were deprived of all water; that plaintiffs should remove a certain blind at the corner of their property; that damages were balanced and that plaintiffs were entitled to compensation for replacing the earthen dam. The judgment which was accordingly entered restrained and enjoined defendants from depriving plaintiffs of their share of available water or in any way wrongfully interfering with plaintiffs' rights as set forth in the findings.

The second action, the one from which this appeal is taken, alleged among other things that on December 17 (the day following the conclusion of the first trial) defendant Orville

Kuhl removed certain boards from the weir and stop box, and that as a result of this act plaintiffs, for the second half of the duck season, were deprived of the use of sufficient water to flood the property for hunting purposes. Damages were asked for the loss occasioned thereby to plaintiffs. Defendants denied that the water was the only necessary and available source of supply to plaintiffs; denied that an adequate supply of water was available during the season; admitted removing the boards from the cement weir and from the stop box, but denied that this act had resulted in any damage to plaintiffs. Affirmatively defendants alleged that the decree in the prior action established certain rights to the use of the water. At the conclusion of the trial on the issues so formed, the jury gave its verdict in favor of plaintiffs in the amount of damages requested.

It is now the contention of appellants that the judgment in the first action was res judicata as to this action; that the respondents by their election of remedies in the first action are barred from seeking further relief in the present action; that the evidence is insufficient to sustain the judgment; that the court committed prejudicial error in admitting certain evidence, and that the damages were improper.

■ As to appellants' first contention, there can be no question but that the judgment in that case was res judicata on all issues that were presented or could have been presented at the trial (*Sutphin* v. *Speik*, 15 Cal.2d 195 [99 P.2d 652, 101 P.2d 497]); however, it is equally well established that the doctrine is limited by the rule that it does not apply to new rights. (*Kettelle* v. *Kettelle*, 110 Cal.App. 310 [294 P. 453]; *Segarini* v. *Bargagliotti*, 79 Cal.App. 347 [249 P. 545]; Code Civ. Proc. § 1911.)

The first proceeding established the rights of plaintiffs to the water and the damages resulting from the acts of defendants as therein alleged. The cause of action in the instant case was for the alleged wrongful acts of defendants occurring on December 17 and subsequent to the trial of the first action. The defendants' breach of their obligation to plaintiffs which was the subject matter of the first action was entirely separate and apart from their breach to plaintiffs which was the subject matter of the second case. In the first action the findings and judgment show without question that the issue of damages was limited to the breach committed during the first half of that season. The question of any damage which might have occurred during the second half

was not in issue. Furthermore, it should here be noted that defendants, at the trial of the second action, made no claim that the damages recovered in the first action also covered the damages resulting from the act of December 17. Rather, they endeavored to justify their act and introduced evidence as to the availability of water which was the major issue at the second trial.

The cases relied upon by defendants in support of their second contention, that plaintiffs made an election of remedies in their original proceeding and hence are barred from further relief, are not applicable to the present situation. ■ The doctrine of inconsistent remedies only attaches when a litigant having full knowledge of all of the facts has elected one of two inconsistent remedies and pursues it to judgment. In the case primarily relied upon by appellants, *Abbott* v. *'76 Land & Water Co.*, 161 Cal. 42 [118 P. 425], plaintiff had brought a suit for specific performance which was granted and damages awarded. His subsequent action for damages for delay in performance was held to be barred by the first. The breach there alleged was a single, entire and complete breach of the contract. Nothing further occurred. However, the court also reiterated the rule herein applicable that, ". . . in such a case a judgment for damages accruing prior to the commencement of the action is not a bar to an action for damages accruing subsequently, for the claim for such damages is a new cause of action." (P. 48.)

■ The instant case is not one wherein there has been a continuing breach. It concerns successive causes of action arising out of the same general subject matter—the right to the water. Successive causes of action based on the same contract or transaction are specifically recognized by section 1047 of the Code of Civil Procedure. The first action was a single cause based upon events occurring on November 5, 1949, and determined the plaintiffs' right to the water. There is nothing in that action, nor did the court or the litigants assume so, to indicate that the acts of that date caused permanent injury or that plaintiffs' land was thereafter valueless. The second action was solely for the damage caused by the acts occurring on December 17 which kept the available water from flooding plaintiffs' land, and was not one for additional damages for the particular breach involved in the former action.

In their reply brief defendants contend for the first time that plaintiffs could only recover for the second breach before

the court of equity which granted the injunction in the first proceeding. Their argument appears to be that plaintiffs elected the wrong course of action, and that their proper remedy was by contempt proceedings. Even if such contention were not subject to the rule precluding consideration of questions raised for the first time on appeal, it is quite apparent that plaintiffs were not limited to seeking an order to show cause by defendants; that was merely an additional remedy for the tortious acts of defendants committed on December 17.

 It is next contended by defendants that the evidence was insufficient to sustain the judgment in that it does not show that the acts of Orville Kuhl were such as to cause plaintiffs any damage, as it was not shown that plaintiffs could have retained the water on their land. The evidence relied upon to sustain such contention is taken out of context. When read as a whole, the record discloses ample evidence that when Yates, on December 17, went to remove the obstruction and to act in accordance with the court's order of the previous day, he found that defendant had removed some boards from the weir as well as some boards from the stop box on his property so that water could not flow onto plaintiffs' property; that is, the water was flowing from the weir to and through the stop box onto defendants' land and draining off at the east end thereof. Furthermore, plaintiffs testified, in response to questions by the court, that there was an equal or greater amount of water discharging at the southeast corner of defendants' property than was entering through the stop box at the northwest corner, and that it was in a sufficient amount to have flooded their land. This testimony by plaintiffs was corroborated by a neighbor who testified to the same effect. The most that can be said for the testimony relied upon by defendants is simply that it created a conflict in the evidence as to whether or not there was available water so that plaintiffs could receive their proportionate share. This question was solely within the province of the jury, and under such circumstances cannot be interfered with by this court.

 Defendants' next contention, that the court committed prejudicial error in admitting testimony of the acts of November 5, is likewise without merit. The acts and damages caused by defendants' conduct on November 5 were not in issue in the present case, nor did plaintiffs attempt to relitigate the issues of the prior action; however, it was incumbent upon plaintiffs to prove the source and availability of the

water. To do this it was necessary to show the method used prior to December 17 and the actual condition of their land during the second half of the duck season. Thus it was proper for them to show the existence of conditions of the land prior to December 17 as this would relate to the sufficiency of the water to maintain flooded conditions on their land. They could show why the land was not flooded; that it was because of the acts of November 5, the destruction of the dam on defendants' property which caused the plaintiffs' land to drain, and the placing of an earthen obstruction before the inlet box at the corner of plaintiffs' property so that the water would not flow upon their land. It was this obstruction which should have been removed in accordance with the court's order in the first case, and hence was a continuing breach.

██ It is defendants' further contention that the damages as awarded were speculative and based on gross income, and hence as a matter of law were improper. It is well settled that where an established business has been injured, the loss of profits resulting therefrom can be recovered. Here there was a satisfactory basis for the damages awarded since it was shown by ample evidence and precise mathematical computations that had it not been for defendants' conduct, plaintiffs could have rented all of the duck blinds on their property for the entire second half of the season.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied February 23, 1955.