[Civ. No. 28638. Second Dist., Div. Three. Sept. 16, 1966.]

LUCKY AUTO SUPPLY, Plaintiff and Appellant, v. JUSTIN G. TURNER et al. Defendants and Appellants.

Joseph M. Wapner for Defendants and Appellants.

Gralla & Gralla and Henry O. Wackerbarth for Plaintiff and Appellant.

FRAMPTON, J. pro tem.*—Appeal by the defendants and cross-appeal by plaintiff from a judgment for damages for violation of a right under a written license agreement to occupy real property.

Plaintiff, a California corporation, for more than 20 years last past, has been engaged in the business of selling automobile supplies, accessories and other merchandise some of which is heavy, and some of which is bulky such as automobile engines, tires, batteries, bicycles and large toy wagons. It operates 24 stores at different locations in southern and central California.

On April 27, 1954, the defendants Maurice Turner and Justin Turner were the trustees of the C & S Kaplan trust; the defendants Charles H. Kaplan and Maurice Turner were the trustees of the Paul and Barbara Turner trust, and the defendants Charles H. Kaplan and Justin G. Turner were the trustees of the R & O Turner trust. These trusts each owned

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

an undivided one-third interest in lots 16, 17, 18 and 19 of block 45, tract 5609 in the City of Los Angeles.

Lots 17, 18 and 19 were improved with a one-story building divided into four separate storerooms and situated on the northwest corner of Pico Boulevard and Westwood Boulevard. The stores fronted on Pico Boulevard. The building was occupied by four tenants including the plaintiff. The corner storeroom had a width of approximately 25 feet and the storeroom occupied by the plaintiff had a width of approximately 40 feet and adjoined the corner storeroom immediately to the west thereof.

On April 27, 1954, the then owners of the property leased to the plaintiff the 40-foot storeroom described in the lease as follows: "That certain store premises in the building at the northwest corner of Pico Boulevard and Westwood Boulevard, Los Angeles, California, adjoining the 25-foot corner store, which premises have a frontage of approximately 40 feet on Pico Boulevard," for the term of 10 years commencing July 1, 1954, at a rental of 3 percent of the gross receipts with a minimum rental of $400 per month for the operation of a store for the sale of automobile supplies, accessories, and similar merchandise sold in automobile accessory stores then operated by the plaintiff.

The lease further provided in paragraph 28 thereof, as follows: "It is specifically agreed between the parties hereto that the parking lot having a frontage of approximately 50 feet on Westwood Boulevard and being across the alley from the rear of the building, of which the demised premises are a part, is owned by the Lessor and that said parking lot shall be available for the use of the Lessee and the other tenants in the building as a parking lot for the customers of the various tenants in said building."

After the execution of the lease the plaintiff took possession of the storeroom and operated its business upon and from the premises until the time of the trial. The parking lot above referred to was available to and was used by the plaintiff and the plaintiff's customers until September 1, 1958.

At the time of the execution of the lease and at the time the plaintiff entered into the occupancy of the demised premises, the store building situated upon lots 17, 18 and 19 was bounded on the north by an alley which ran from Westwood Boulevard to the next street westerly thereof, and the parking lot (lot 16) described in the lease was situated immediately north of the alley. The parking lot had a width of approxi-

mately 56 feet along the west side of Westwood Boulevard and a depth westerly therefrom of 135 feet.

The plaintiff maintained a service and installation department in the rear portion of the storeroom. This department and the rear entrance to the storeroom were located directly across the alley from the parking lot. Above the rear entrance the plaintiff had installed and maintained a sign reading "Lucky Auto Supply Service Entrance," and electric lights were installed immediately above this sign to illuminate it at night. The sign was visible to persons parking on the parking lot and to pedestrians and automobile traffic proceeding along Westwood Boulevard up until the time that the defendants constructed a building on the parking lot, but was not visible as above indicated thereafter.

The parking lot was accessible by pedestrian and automobile traffic from the alley and the customers of the plaintiff would park on the parking lot directly across from the service and installation department and the rear entrance to the store, as well as upon the whole of the parking lot; would visit the plaintiff's store through the rear entrance and service department, and would purchase various items of merchandise. There were 25 stalls for automobile parking on the parking lot prior to the construction of the building thereon.

The employees of the plaintiff were able to observe the customers' automobiles which were parked directly across the alley from the service entrance for the purpose of identifying the parts needed for the various automobiles in accordance with the type, year and model of the automobile, without being required to leave the service entrance or the store premises. The employees, together with the customers of the plaintiff who had purchased heavy or bulky types of merchandise, were able to carry the same across the alley to their parked cars on the parking lot. The parking lot was strategically located for the convenience of the plaintiff and its customers and was necessary for a more profitable operation of its business.

Prior to the construction of the building on the parking lot by the defendants, there was a sign erected on the southeasterly corner of the parking lot, facing Westwood Boulevard, with the plaintiff's name displayed thereon and notifying plaintiff's customers that the parking lot was available for their use.

During the time that the plaintiff conducted its business upon the demised premises, both Pico Boulevard and West-

wood Boulevard were main business thoroughfares and the parking of automobiles on Pico Boulevard was restricted during normal business hours on all days except Sunday, and automobile parking on Westwood Boulevard was restricted to one hour from 9 a.m. until 4:15 p.m. and no parking was permitted thereon from 7 a.m. until 9 a.m. or from 4:15 p.m. until 6 p.m., and because of such restricted parking the plaintiff's customers were unable to park their automobiles on Pico Boulevard or Westwood Boulevard in front of or near the plaintiff's store during all normal business hours. This made the use of the parking lot by the plaintiff and the plaintiff's customers an important adjunct to the conduct of the plaintiff's business.

During the month of July 1955, the defendants requested permission from the plaintiff to construct a building on the parking lot and the plaintiff refused to grant such permission. On September 1, 1958, the defendants erected barricades and a fence around the boundary line of the parking lot, deposited building material on the lot and proceeded to construct a building thereon. During the construction of the building there was not sufficient space on the parking lot to park four automobiles. Since September 1, 1958, the plaintiff has not had the use of the parking lot either for itself or for its customers. Other parking facilities were furnished by the defendants after the erection of the building. These parking facilities were to be used by 13 tenants of the defendants and were not the parking facilities described in the plaintiff's lease.

Subsequent to April 27, 1954, and before September 1, 1958, certain of the original owners of the property here involved sold their interest therein and the purchasers of such interests were duly substituted in as defendants below.

The case went to trial upon the first, second and sixth counts of the second amended complaint. The first count sets forth generally the plaintiff's occupancy of the demised premises under the terms of the lease and of the plaintiff's right to the use of the parking lot; that without the consent of the plaintiff the defendants did wilfully and intentionally enter and trespass upon the parking lot by, amongst other things, constructing a building thereon. It is further alleged that by reason of the conduct of the defendants in wilfully and wrongfully taking possession of the parking lot and depriving the plaintiff and its customers of the use thereof the plaintiff has suffered damages and loss of business profits and good will in the sum of $25,000. The second count incorporated substan-

tially all of the allegations contained in the first count; alleges the right of the plaintiff and its customers to the use of the parking lot under paragraph 28 of the lease; that the defendants wrongfully took possession of the lot and caused a building to be constructed thereon thus depriving the plaintiff and its customers of their right. The plaintiff seeks damages under this count for the deprivation of the use of the property since September 1958 in the sum of $17,000 plus $500 per month until the premises are restored or the lease expires. The sixth count seeks reasonable attorneys' fees allowable under the provisions of the lease.

The court rendered judgment for the plaintiff and against the defendants in the sum of $100 per month for loss of profits and good will from September 1, 1958, to June 30, 1964, the date of termination of the lease, in the total sum of $7,000. The court also awarded the sum of $500 as exemplary damages and $2,500 as reasonable attorneys' fees.

The defendants attack the judgment upon the following grounds:

"1. Respondent was not entitled to damages, either actual or punitive, and as a corollary therefrom, the Finding XVIII is not supported by the evidence."

Finding XVIII is as follows: "The court further finds that as a proximate result of defendants' trespass upon the parking lot, the eviction and deprivation of plaintiff's use thereof, plaintiff suffered and will continue to suffer damages in loss of profits and good will in the amount of $100.00 per month from September 1, 1958, to June 30, 1964, the date of the termination of the lease."

"2. The award of fees to counsel for respondent was excessive by reason of the fact that the bulk of the work was in connection with the injunction action, and (a) Appellants were entitled to fees for their counsel as they were successful in three of the six causes of action.

"3. The court erred in admission of evidence concerning income of alleged 'comparable stores.' "

The plaintiff attacks the judgment upon the following grounds: 1. It "is entitled to damages for loss of profits and good will and, also, for the depreciation in the value of the leasehold.

"2. The trial court erred in sustaining appellants' demurrer to the third cause of action of respondent's second amended complaint."

The defendants' assertion that the plaintiff was not entitled to recover any damages is predicated upon the fact that after the construction of the building upon the parking lot area the profit and loss statements of the plaintiff disclosed that it had made some profit from the operation of its business notwithstanding the fact that it and its customers had been deprived of the use of the parking lot facilities. The plaintiff contends that had the facilities of the parking lot remained available to it and its customers it would have made a greater profit than was shown on its financial statements.

To sustain the plaintiff's claim of loss of profits it introduced evidence to show that the sales of the Pico store (the store involved under the lease) did not increase at the same average rate as did the sales of five of its comparable stores after the defendants had deprived the plaintiff and its customers of the use of the parking lot facilities.

In this connection one Maurice Getz testified that he was the secretary and vice president of the plaintiff and had been an officer of the corporation for about 26 years; that the account books and records were kept under his supervision and that he was familiar therewith; that the books and records of each store are kept in the same manner; that in his opinion it was necessary for the parking lot to be located adjacent to the service entrance to the Pico store for the profitable operation of the business. He testified further that he had knowledge of the operation of the 24 stores conducted by the plaintiff and that stores numbers 1, 7, 11, 14 and 16 were comparable to the Pico store; that these five stores were similar in size, parking facilities and type of residential neighborhood; that surrounding business districts were growing in a similar manner and there were similar social, economic and racial groups in the surrounding areas; that the sales of these five comparable stores were added together and compared with those of the Pico store. He testified further that the books and records showed that there was a 48 percent average increase in business in the five comparable stores between the years 1958 and 1962, whereas there was only a 26 percent increase in business in the Pico store. Getz produced summaries prepared from the books and records of the five comparable stores and the Pico store showing the comparative sales made both before and after the plaintiff had been deprived of the use of the parking lot. These summaries, without going into great detail here as to their content, demonstrated a loss of sales at the Pico store for the years 1959 through 1962 in the sum of $35,000, and

showed further that if such loss of sales figures were projected for the years 1963 and 1964 they would show an additional loss of sales in the sum of $35,000. Getz testified further that the plaintiff's net profit on the sales thus shown to have been lost would be the sum of $23,000.

A qualified expert real estate appraiser was called as a witness on behalf of the plaintiff and he testified that in his opinion the reasonable rental value of the demised property as it existed prior to September 1958 was $600 per month, whereas the reasonable rental value of the property without access to automobile parking on the parking lot was $400 per month.

▮ Under the terms of the lease the plaintiff was given a license coupled with an interest to occupy the parking lot in common with the other tenants in the building and to have it available as a parking lot for its customers for the term of the lease or for so long as the plaintiff was in lawful occupancy of the demised premises under the terms of the lease.

It has been said that ''Because a licensee has no interest in the land he cannot maintain an action in trespass or ejectment. At the most, he may maintain an action to enjoin or to redress a violation of his right to exercise the license. (See annotation in 139 A.L.R. 1204.) The principle is thus stated in *Bell Tel. Co.* v. *Baltimore & O. R. Co.*, 155 Pa.Super. 286 [38 A.2d 732, 733] : 'It is true that a license does not confer a right of possession sufficient to support an action in trespass quare clausum fregit (Tiffany, Real Property, §§ 814, 829), or an action of ejectment. *Union Petroleum Co.* v. *Bliven Petroleum Co.*, 72 Pa. 173. ▮ But a licensee may maintain an action of trespass in the nature of common-law case for any invasion or disturbance of the terms of the license whether by the licensor or by third parties.' '' (*Nahas* v. *Local 905, Retail Clerks Int. Assn.*, 144 Cal.App.2d 808, 821 [301 P.2d 932, 302 P.2d 829]. See also 25 Am.Jur.2d, Easements and Licenses, § 36, p. 536 ; 53 C.J.S., Licenses, § 96b, p. 822.)

▮ The conduct of the defendants, over the objection of the plaintiff, in constructing a building upon the parking lot in such manner as to effectively deprive the plaintiff of its right to exercise its license to occupy the lot as a parking lot and to have it available, as promised, as a parking lot for customers of the plaintiff was a tortious act for which the defendants became liable to the plaintiff for damages proximately caused by such act.

▮ It is settled that ''The measure of damages in this state for the commission of a tort, as provided by statute, is

that amount which will compensate the plaintiff for all detriment sustained by him as the proximate result of the defendant's wrong, regardless of whether or not such detriment could have been anticipated by the defendant. (Civ. Code, § 3333.)

"It is well established in California, moreover, that such damages may include loss of anticipated profits where an established business has been injured. (*Natural Soda Products Co.* v. *City of Los Angeles,* 23 Cal.2d 193, 199 [143 P.2d 12]; *Hoag* v. *Jenan,* 86 Cal.App.2d 556, 563 [195 P.2d 451]; *Guttinger* v. *Calaveras Cement Co.,* 105 Cal.App.2d 382, 387 [233 P.2d 914]; *Yates* v. *Kuhl,* 130 Cal.App.2d 536, 542 [279 P.2d 563].) The basis of this principle is that where the operation of an established business is prevented or interrupted by a tort, damages for loss of prospective profits, that otherwise might have been made from its operation, are ordinarily recoverable for the reason that their occurrence and extent may be ascertained with reasonable certainty from the working experience of the business, from the past volume of business, and other provable data relevant to the probable future sales. (*Grupe* v. *Glick,* 26 Cal.2d 680, 692-693 [160 P.2d 832]; *Hoag* v. *Jenan, supra,* at p. 563; *Gainer* v. *Storck,* 169 Cal.App.2d 681, 687 [338 P.2d 195]; *Edwards* v. *Container Kraft Carton etc. Co.,* 161 Cal.App.2d 752, 759-761 [327 P.2d 662].) Concomitant with this principle is the rule that the award for damages for loss of profits depends upon whether there is a satisfactory basis for estimating what the probable earnings would have been had there been no tort. (*Natural Soda Products Co.* v. *City of Los Angeles, supra,* at p. 199; *Guttinger* v. *Calaveras Cement Co., supra,* at p. 387; *Edwards* v. *Container Kraft Carton etc. Co., supra,* at pp. 759-761.) If no such basis exists, it may be necessary to deny such recovery, but if, however, there has been an operating experience sufficient to permit a reasonable estimate of probable income and expense, damages for loss of profits are awarded. (*Natural Soda Products Co.* v. *City of Los Angeles,* at p. 199; *Edwards* v. *Container Kraft Carton etc. Co., supra,* at pp. 759-761.) While the courts have often noted the difficulty of proving the amount of loss of profit they have also recognized that a defendant cannot complain if the probable profits are of necessity estimated, the rationale being that it was the defendant himself who prevented the plaintiff from realizing profits. (See *Natural Soda Products Co.* v. *City of Los Angeles, supra,* at p. 199.) Accordingly, it is clear

from the cases that the general principle inherent in the recovery of damages for loss of prospective profits is that the evidence must make *reasonably certain* their nature, occurrence and extent. In sum, such evidence must be of reasonable reliability.'' (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists, Local 1304,* 227 Cal.App.2d 675, 702-703 [39 Cal.Rptr. 64].)

█ In the case at bench the evidence shows that the plaintiff had an established business at the Pico store and had for many years conducted similar business enterprises under conditions reasonably comparable to the conditions which existed at the location of the Pico store. It had kept accurate accounting records showing the profits made from the conduct of its business both before and after it was deprived of the parking lot facilities. It is reasonably certain that the plaintiff lost customers because of the lack of parking facilities available at its Pico store after the defendants commenced construction of the building on the parking lot, and the evidence introduced to show the loss of profits by reason of the loss of customers was of reasonable reliability. The evidence was both competent and sufficient to support the award of damages.

█ The lease contained the following provisions with respect to attorneys' fees, ''In case Lessor shall bring suit to recover any rent due hereunder or for breach of any covenant of this lease, or to recover possession of the premises, and shall recover in the suit, or if Lessee shall bring any action for any relief against Lessor, declaratory or otherwise, arising out of this lease, and Lessor shall prevail in such action, Lessee agrees to pay Lessor a reasonable attorney's fee which shall be taxed by the court as part of the costs of such action; otherwise, Lessor agrees to pay Lessee a reasonable attorney's fee.''

Plaintiff's action sought relief against the defendants (lessors) for their tortious invasion of the plaintiff's rights arising out of the lease. The defendants did not prevail in the action but the plaintiff did prevail. Under the provisions of the lease the plaintiff was entitled to an award of reasonable attorneys' fees. (*Ansco Constr. Co.* v. *Ocean View Estates, Inc.,* 169 Cal.App.2d 235 [337 P.2d 146].)

It appears that on October 14, 1958, the plaintiff filed an action wherein it sought a mandatory injunction to compel the defendants to remove the building erected by them on the parking lot. Upon the hearing of an order to show cause in this action an injunction was denied. The plaintiff, on June 9,

1961, filed a first amended complaint seeking damages for trespass. The defendants moved to dismiss the first amended complaint for failure to prosecute and this motion was granted only as to that portion of the action seeking injunctive relief. In September 1961 the plaintiff filed its second amended complaint setting forth six counts upon which it sought relief. The defendants interposed a demurrer to the second amended complaint and upon hearing the demurrer was overruled as to the first, second and sixth counts and was sustained without leave to amend as to the third and fourth counts and the fifth count was ordered stricken. Under this state of the record we cannot say that the allowance of attorneys' fees to the plaintiff in the sum of $2,500 was unreasonable. The appellants' claim that they are entitled to attorneys' fees because they were successful on demurrer in destroying three of the six counts in the second amended complaint is without merit.

Appellants' third contention that the trial court committed error in the admission of evidence relating to the income from other stores owned and operated by the plaintiff, but shown to have been operated under conditions and circumstances substantially similar to those under which the Pico store was operated is, in view of what has heretofore been said, also without merit.

The plaintiff contends that it was not only entitled to damages measured by its loss of profits and good will but in addition thereto it was entitled to damages for the depreciation in the value of its leasehold. The trial court denied the latter upon the grounds that to allow damages for the depreciation in the value of the leasehold in addition to damages for the loss of profits and good will would constitute a double recovery.

The plaintiff continued in possession of the demised premises and operated its business thereon until the expiration of the term of the lease. The plaintiff was not evicted from the demised premises. Plaintiff's damages under these circumstances consisted of its loss of profits and good will resulting from the tortious act of the defendants in depriving the plaintiff of the parking privileges herein referred to. It was the continued use of the demised premises and the conduct of plaintiff's business thereon that brought about the loss in profits and good will. The depreciation in the value of plaintiff's leasehold under these circumstances is absorbed by and reflected in the damages for loss of profits and good will. Plaintiff, no doubt, could have sought damages upon the theory of

depreciation in the value of its leasehold, however, under the circumstances here shown it may not recover damages for both its loss of profits and good will and for depreciation in the value of its leasehold for this would amount to a double recovery. (*Landon* v. *Hill*, 136 Cal.App. 560, 566 [29 P.2d 281].)

 The plaintiff contends that the trial court committed error in sustaining the demurrer to the third count in the second amended complaint. This count sought recovery from the defendants of the rentals received by them from the tenants who occupied the building which the defendants had constructed upon the parking lot. Plaintiff based its right to recovery under this count upon the theory of restitution and unjust enrichment.

It is said that ''The word 'restitution' was used in the earlier common law to denote the return or restoration of a specific thing or condition. In modern legal usage, its meaning has frequently been extended to include not only the restoration or giving back of something to its rightful owner, but also compensation, reimbursement, indemnification, or reparation for benefits derived from, or for loss or injury caused to, another. The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor.

 ''It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. As expressed by some authorities, the obligation to do justice rests upon all persons, natural and artificial; if one obtains the money or property of others without authority, the law, independently of express contract, will compel restitution or compensation.'' (46 Am.Jur., Restitution and Unjust Enrichment, p. 99. See also 77 C.J.S., Restitution, p. 322; 91 C.J.S., Unjust Enrichment, p. 490; 42 Cal.Jur.2d, Restitution and Unjust Enrichment, § 1, p. 795.)

 The rentals received by the defendants from tenants who occupied the building constructed upon the parking lot are attributable to the defendants' ownership of and invest-

ment in the land and the building constructed thereon. The plaintiff had no right in the corpus which produced the rentals. The plaintiff's right was that of a license to use the parking lot in common with other tenants who occupied portions of the demised premises. The plaintiff having been deprived of this license by the wrongful act of the defendants nevertheless has been adequately compensated for such wrong in the way of damages for its loss of profits and good will occasioned by such wrongful act. Under the circumstances there is no foundation either in law or in equity upon which the plaintiff may claim the right to the rentals received by the defendants from tenants who occupied the building which was constructed upon the parking lot. We find no error in the trial court's ruling on the demurrer to the third count in the second amended complaint.

The judgment is affirmed. The plaintiff to recover its costs on appeal.

Shinn, P. J., and Kaus, J., concurred.

A petition for a rehearing was denied October 10, 1966, and the petition of the defendants and appellants for a hearing by the Supreme Court was denied November 9, 1966.