704 F.2d 1449
 1983-1 Trade Cases 65,355
 D.A. RICKARDS, M.A. Custer, Paul V. Belkin and John S.
Sleasman, Plaintiffs/Appellants,
v.
CANINE EYE REGISTRATION FOUNDATION, INC., Lawrence M.
Trauner, Dolly B. Trauner, David E. Lipton, Alan D.
MacMillan, Dennis D. Olin, Randall H. Scagliotti and Ralph
C. Vierheller, Defendants/Appellees.
 No. 81-4668.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 13, 1982.
Decided May 3, 1983.
 
 1
 Forrest A. Hainline, III, San Francisco, Cal., for defendants/appellees.
 
 
 2
 Joseph M. Alioto, Alioto & Alioto, San Francisco, Cal., for plaintiffs/appellants.
 
 
 3
 Appeal from the United States District Court for the Northern District of California.
 
 
 4
 Before DUNIWAY, Senior Circuit Judge, and BOOCHEVER, Circuit Judge and KEEP,* District Judge.
 
 KEEP, District Judge:
 
 5
 On October 31, 1979, plaintiffs (hereinafter referred to as appellants) filed a complaint seeking damages and injunctive relief, alleging that defendants (hereinafter referred to as appellees) violated both the Sherman Act, 15 U.S.C. Secs. 1-2 (1976) and various California antitrust laws,[1] and committed the common-law tort of intentional interference with prospective economic advantage. The parties stipulated to trial before a magistrate. On June 22, 1981, two days before trial, the magistrate heard appellees' motions in limine and for summary judgment. Appellees' motion in limine, requesting an order precluding appellants from offering at trial testimony from experts not designated in the "Joint Pretrial Statement," was granted. In light of his ruling on the motion in limine, the magistrate then granted appellees' summary judgment motion as to the antitrust damages claims.
 
 
 6
 On June 24, 1981, the case proceeded to trial on the antitrust claims for injunctive relief and the common-law interference with prospective economic advantage claim. The common law claim was tried to a jury sitting in an advisory capacity, and the injunctive claims were tried to the magistrate. After appellants concluded their presentation of evidence, appellees moved for a directed verdict on the common law claim pursuant to Fed.R.Civ.P. 50(a), and dismissal of the injunctive claims pursuant to Fed.R.Civ.P. 41(b). The magistrate granted both motions. We affirm.
 
 I. FACTS
 
 7
 The Canine Eye Registration Foundation ("CERF") is a non-profit, tax-exempt, charitable organization. None of CERF's officers or directors is a veterinarian. According to its constitution, CERF's purpose is to collect, collate, and disseminate information concerning hereditary eye diseases in dogs by establishing a registry listing purebred dogs of those breeds that are susceptible to hereditary eye diseases. CERF requires dogs to be examined by veterinarians certified by the American College of Veterinary Ophthalmologists ("ACVO") before listing the dogs in its registry. ACVO members evaluate the dogs using forms provided by CERF. The ACVO veterinarian then returns one copy of the form to CERF, and, if the owner remits the original to CERF with a $5.00 registration fee, CERF issues to the owner a certificate indicating whether the dog suffers from hereditary eye defects. Regardless of whether the owner sends the original and the fee to CERF, the information from the examining veterinarian is tabulated and made available to dog breeders and researchers around the country.
 
 
 8
 Veterinarians wishing to become ACVO-certified specialists in veterinary ophthalmology must pass a series of tests devised by ACVO under general guidelines established by the American Veterinary Medical Association.[2] The applicant first presents his or her credentials to ACVO. If the applicant's qualifications meet ACVO's Credential Committee's standards, the applicant must then take and pass written, oral, and practical qualifying exams before receiving ACVO certification. Approximately 84% of the applicants are ultimately certified.
 
 
 9
 Appellants herein are veterinarians who could not or did not pass ACVO's certification exams,[3] and thus could not perform canine eye examinations that CERF would list in its registry. The thrust of appellants' complaint is that through a combination or conspiracy between ACVO and CERF, appellants were precluded from performing eye-screening examinations. They allege CERF and ACVO engaged in a group boycott, and an illegal tying arrangement whereby the issuance of a CERF Registration Certificate was tied to the use of the CERF form and the examination performed by a member of ACVO. Appellants also allege that appellees engaged in price-fixing since all ACVO members performing eye-screening exams charged between $5.00 and $7.50, allegedly at the suggestion of CERF. Appellants claim that defendants combined and conspired to prevent others from establishing canine eye registries to monopolize the market in eye-screening examinations. Appellees allegedly engaged in the following exclusionary practices: preventing non-members of ACVO from performing the eye exams and falsely implying that non-specialists were not as competent as ACVO certified ophthalmologists. Finally, appellants claim the above mentioned conduct violated California unfair competition laws and constituted an intentional interference with prospective business advantage.
 
 II. DISCUSSION
 
 10
 Appellants raise three issues before this Court. They first argue that the magistrate improperly granted appellees' motion for summary judgment on the antitrust damages claim. After viewing the record in its entirety, we hold that summary judgment was properly granted. Even though summary judgment is not particularly favored in antitrust litigation, Poller v. CBS, 368 U.S. 464, 467, 473, 82 S.Ct. 486, 488, 491, 7 L.Ed.2d 458 (1962); Blair Foods, Inc. v. Ranchers Cotton Oil, 610 F.2d 665, 668 (9th Cir.1980), summary judgment was properly granted here. At the time the motion was filed, less than two weeks before trial, appellants had neither identified their expert witnesses nor designated documents supporting their damages claims. There thus was no competent or relevant evidence from which a jury could fairly estimate damages, see Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co., 467 F.Supp. 841, 863 (N.D.Cal.1979), aff'd sub nom. Murphy Tugboat Co. v. Crowley, 658 F.2d 1256 (9th Cir.1981), and appellees were thus entitled to judgment on the damages issue as a matter of law. See Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc., 637 F.2d 1376, 1381 (9th Cir.), cert. denied, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981).
 
 
 11
 Appellants next argue that the magistrate improperly granted appellees' motions to dismiss the antitrust injunctive claims and for a directed verdict on the common-law claim of tortious interference with prospective economic advantage. We discuss these in turn.
 
 
 12
 A. The Motion to Dismiss.
 
 
 13
 At the close of appellants' case, appellees brought a motion to dismiss pursuant to Rule 41(b)[4] which was granted. When a trial court finds against the plaintiff on a Rule 41(b) motion, it is required to make findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).[5] Appellants claim here that they are entitled to a de novo review of the facts because the magistrate adopted findings drafted and submitted by the appellees. The fact that the magistrate adopts findings prepared by the prevailing party does not by itself necessitate a de novo review; however, the magistrate's findings will be more carefully scrutinized in such cases. Photo Electronics Corp. v. England, 581 F.2d 772, 777 (9th Cir.1978). The clearly erroneous standard still applies, and this Court will overturn the magistrate's findings only if the record firmly convinces us that a mistake has been made.
 
 
 14
 1. The Sherman Act Section 1 violations.
 
 
 15
 In granting the motion to dismiss, the magistrate first concluded that appellants demonstrated no right to relief under Section 1 of the Sherman Act, 15 U.S.C. Sec. 1 (1976).[6] Appellants contend that they proffered evidence substantiating group boycott, price-fixing, and tie-in claims which constitute per se violations of Section 1. We reject this contention. To prove a violation of Section 1, appellants must show a contract, combination, or conspiracy in restraint of trade. On the record before this Court there is insufficient evidence of an agreement. CERF's decision to accept canine hereditary eye examination data exclusively from ACVO-certified veterinarians was unilaterally made, and was based on considerations of quality control and reliability. It is true that ACVO formed a committee to provide scientific information to CERF because CERF's officers and directors are lay persons, and, that prior to its incorporation, CERF consulted ACVO on the feasibility of an eye registry. There was, however, no evidence that ACVO participated in either the formulation of CERF policy or the drafting of CERF's constitution. In fact, once CERF publicized its decision to limit its registry to examination data prepared by ACVO members, some ACVO members voiced their disapproval. There was an understanding between ACVO and CERF that ACVO would supply CERF scientific information and guidance on medical issues but this understanding does not rise to the level of an agreement violative of Section 1 of the Sherman Act.
 
 
 16
 Even if there were sufficient evidence of an agreement, the record before us demonstrates that the "agreement" amounts to nothing more than a type of exclusive dealership agreement: CERF provided examination forms only to ACVO members and would accept no other type of form for inclusion in its registry. The reason justifying this CERF-ACVO relationship is valid. ACVO members are the only veterinarians who have objectively demonstrated that they are qualified to perform the hereditary eye examinations. Obviously, examination reliability is of utmost concern to CERF.
 
 
 17
 This type of exclusive dealership arrangement, without more, is not violative of Section 1 of the Sherman Act. As the court stated in Determined Productions, Inc. v. R. Dakin & Co., 514 F.Supp. 645, 646 (N.D.Cal.1979), aff'd mem., 649 F.2d 866 (9th Cir.1981):
 
 
 18
 We must begin with the well-settled proposition that a trader has the right to deal or refuse to deal with whomever he pleases for reasons sufficient to himself. [citations omitted] A refusal to deal is not unlawful unless it implements an arrangement to restrain trade by, for example, enforcing price maintenance, barring a competitor from a market or maintaining a dominant market position. See, Bushie v. Stenocord, 460 F.2d 116, 119 (9th Cir.1972).
 
 
 19
 In GTE Sylvania, Inc. v. Continental T.V., Inc., 537 F.2d 980, 997 (9th Cir.1976) (en banc), aff'd, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), this Court noted that "[t]here is a veritable avalanche of precedent" holding that exclusive dealing, without more, does not show a violation of the antitrust laws. The record demonstrates that CERF's policy of providing examination forms exclusively to ACVO members and accepting results only from them, is nothing more than a form of exclusive dealership. Accordingly, the magistrate's conclusion that CERF and ACVO did not enter into an agreement violative of Section 1 of the Sherman Act is correct.
 
 
 20
 Since there was no agreement between CERF and ACVO members to exclude nonmembers, there is nothing in the record supporting appellants' group boycott theory. A claim of concerted refusal to deal obviously cannot stand without evidence of concert. Cleary v. National Distillers & Chemical Corp., 505 F.2d 695, 697 (9th Cir.1974) (per curiam). An individual distributor acting alone has the right to deal with whomever he pleases. Id.
 
 
 21
 Appellants' price-fixing claim similarly is left unsubstantiated by the record. The record shows that examining veterinarians never discussed fees with CERF, that examination prices charged by the ACVO-certified veterinarians ranged from $5.00 to $7.50, and that CERF provided the exam forms free of charge to ACVO veterinarians. Although CERF directors apparently made several inquiries regarding fees, the inquiries were unanswered. Isolated requests for price information, however, do not a price-fixing claim make, Krehl v. Baskin-Robbins Ice Cream Co., 664 F.2d 1348, 1357 (9th Cir.1982), and the magistrate was thus justified in granting the motion to dismiss the price-fixing claim.
 
 
 22
 Finally, appellants' tie-in theory must likewise be rejected. Appellants contend that appellees "tied" the issuance of a CERF Registration Certificate to the use of a CERF Examination Form and service by an ACVO member. To establish an unlawful tying arrangement, appellants must offer proof that there are two separate products, and that the sale of one (the tying product) has been conditioned upon the purchase of the other (the tied product). Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 613-14, 73 S.Ct. 872, 883, 97 L.Ed. 1277 (1953); Krehl v. Baskin-Robbins Ice Cream Co., 664 F.2d at 1352; Siegel v. Chicken Delight, Inc., 448 F.2d 43, 47 (9th Cir.1971), cert. denied, 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1972). In examining a tie-in claim, this Court must consider whether the seller of the tying product (the CERF certificate) harbors an economic interest in the tied product (the use of the CERF examination form and the performance of services by an ACVO member). Moore v. Jas. H. Matthews & Co., 550 F.2d 1207, 1216 (9th Cir.1977). The CERF examination forms were provided to the veterinarians free of charge. The fee charged by the veterinarians did not benefit CERF in any way. From the state of the record, the magistrate correctly ruled that CERF, the seller of the tying product, harbored no economic interest in the tied product.
 
 
 23
 In sum, we hold that the magistrate properly granted appellees' motion to dismiss. The record fails to support appellants' contentions that the parties entered into an "agreement" violative of Section 1 of the Sherman Act. Appellants' group boycott, price-fixing and tie-in claims are unsubstantiated by the record. We next turn to appellants' Section 2 claim.
 
 
 24
 2. The Sherman Act Section 2 violations.
 
 
 25
 Under Section 2 of the Sherman Act, 15 U.S.C. Sec. 2 (1976),[7] appellants carry the burden of showing: (1) specific intent to control prices or destroy competition in some part of commerce; (2) predatory or anticompetitive conduct directed toward accomplishing that purpose; (3) a dangerous probability of success; and (4) causal antitrust injury. California Computer Products v. IBM, 613 F.2d 727, 736 (9th Cir.1979). Appellants' claim fails on the first requirement. There is no evidence of specific intent to control prices or destroy competition. While specific intent may be inferred from substantial anticompetitive conduct, Forro Precision, Inc. v. IBM, 673 F.2d 1045, 1059 (9th Cir.1982), the record in the instant case reveals pro-competitive conduct. Setting minimum standards to insure quality increases competition and is entirely reasonable.
 
 
 26
 This Court's opinion in Deesen v. The Professional Golfers' Association of America, 358 F.2d 165 (9th Cir.1966) cert. denied, 385 U.S. 846, 87 S.Ct. 72, 17 L.Ed.2d 76 (1966) is instructive. In Deesen, plaintiff, a professional golfer, claimed that defendants engaged in a combination or conspiracy to monopolize professional golf tournaments and to boycott him. The PGA maintained proficiency requirements for players wishing to enter PGA tournaments. The requirements were justified by the PGA's interests in fostering competition and in preventing tournament overburdening by players of inferior ability. The court found the PGA's conduct entirely reasonable. Just as the PGA set certain requirements to insure high quality golf tournaments, CERF established objective criteria to measure competence in the field of veterinary ophthalmology. Just as the PGA treated all golfers similarly, CERF applied its policy in an even-handed manner. In both cases, the conduct complained of was procompetitive and not anticompetitive. Thus, with neither direct nor inferential evidence of specific intent to monopolize, appellants' Section 2 claim must fall. The facts are plainly insufficient to support the claim, and it is therefore unnecessary to consider the other Section 2 requirements. The dismissal of all the antitrust claims was clearly warranted.[8]
 
 
 27
 B. The Directed Verdict.
 
 
 28
 In considering whether the magistrate properly granted appellees' motion for directed verdict, pursuant to Fed.R.Civ.P. 50(a), this Court must determine, by viewing the evidence as a whole, whether appellants presented substantial evidence that could support a finding in their favor by reasonable jurors. Chisholm Brothers Farm Equipment Co. v. International Harvester Co., 498 F.2d 1137, 1140 (9th Cir.1974). If appellants fail to present sufficient evidence, the court must direct a verdict in appellees' favor. Id.
 
 
 29
 The magistrate directed a verdict on the tortious interference with prospective economic advantage claim. To prevail on this pendent state-law claim, appellants must establish: (1) the existence of a specific economic relationship between appellants and third parties that may economically benefit appellants; (2) knowledge by the appellees of this relationship; (3) intentional acts by the appellees designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the appellants. Buckaloo v. Johnson, 14 Cal.3d 815, 827, 537 P.2d 865, 872, 122 Cal.Rptr. 745, 752 (1975). Some identifiable pecuniary or economic benefit must accrue to appellees that formerly accrued to appellants, De Voto v. Pacific Fidelity Life Insurance Co., 618 F.2d 1340, 1348 (9th Cir.), cert. denied, 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980).
 
 
 30
 Viewing the evidence as a whole, we conclude that several elements of the tortious interference claim were not established, and that the directed verdict was properly granted. First, the evidence fails to support appellants' claim that creation of CERF's canine eye registry disrupted an ongoing economic relationship between appellants and third parties. Several dog owners did testify that they would have retained appellants' veterinary services but for CERF's requirement that only eye exams performed by ACVO-certified veterinarians would be listed in CERF's registry. Appellants argue that this testimony constitutes evidence of specific economic relationships that were disrupted by appellees' conduct. We disagree. The evidence only demonstrates that some owners chose not to retain appellants. Appellants' regular clients sought appellants' veterinary services before and after creation of CERF's registry system and thus the evidence does not show that an ongoing business relationship between appellants and their regular clients was somehow disrupted. Further, because appellants did not perform genetic eye-screening exams for purposes of an eye registry, CERF's registry system did not interfere with appellants' specific business relations.
 
 
 31
 Second, the record is devoid of evidence indicating that appellees intended to disrupt appellants' business relationships with their clients. Appellants state in their reply brief that appellees "knew or should have known" of the economic relationships between appellants and third persons, and that appellees "committed intentional acts designed to disrupt business relationships between non-ACVO plaintiffs and their customers and prospective customers". Appellants' Reply Brief, p. 5. Proof of these claims, however, does not reasonably support a finding that appellees intended to disrupt appellants' business relationships with third persons. Motive or purpose to disrupt ongoing business relationships is of central concern in a tortious interference case, Lowell v. Mother's Cake and Cookie Co., 79 Cal.App.3d 13, 18, 144 Cal.Rptr. 664, 668 (1978), and a strong showing of intent is required to establish liability. As we said in De Voto v. Pacific Fidelity Life Insurance Co., 618 F.2d at 1347:
 
 
 32
 Tortious interference requires a state of mind and a purpose more culpable than the "intent" under the Restatement definition, however. The fact of a general intent to interfere, under a definition that includes imputed knowledge of consequences, does not alone suffice to impose liability. Inquiry into the motive or purpose of the actor is necessary .... Where the actor's conduct is not criminal or fraudulent, and absent some other aggravating circumstances, it is necessary to identify those whom the actor had a specific motive or purpose to injure by his interference and to limit liability accordingly. The extent of liability, for this tort, is fixed in part by the motive or purpose of the actor.
 
 
 33
 Appellees' conduct is neither criminal nor fraudulent and no aggravating circumstances appear in the record. The record is devoid of direct evidence of improper motive or purpose and we will not infer such motive merely because appellees "should have known" that creation of their registry injured appellants' business dealings. Further, it is our conclusion that appellees' motive in creating the canine eye registry was proper. CERF's requirement that ACVO-certified veterinarians administer the eye exams was motivated neither by the desire to disrupt appellants' business relations nor by an improper concern for economic reward. Instead, the requirement merely insures that qualified individuals perform the eye examinations. The proffered evidence thus fails to establish intent to injure appellants' business relations.
 
 
 34
 Finally, appellants failed to present competent evidence to prove damages. As previously discussed, appellants' damages proof was speculative at best. And since proof of the nature and extent of damages must be reasonably certain before recovery is warranted, Lucky Auto Supply v. Turner, 244 Cal.App.2d 872, 883, 53 Cal.Rptr. 628, 634 (1966), appellants' interference with prospective economic advantage claim falls on the damages issue as well.
 
 
 35
 Viewing the record as a whole, the magistrate was not presented with substantial evidence supporting a finding by reasonable jurors in appellants' favor. Appellants failed to establish several elements of their intentional interference with prospective economic advantage claim, and thus the motion for directed verdict was properly granted.
 
 
 36
 Accordingly, the magistrate's rulings are hereby AFFIRMED.
 
 
 
 *
 Honorable Judith N. Keep, District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 Cal.Bus. & Prof.Code Secs. 16700-16703 (West 1964 & Supp.1982); Id. Secs. 16720-16727
 
 
 [2]
 The American Veterinary Medical Association ("AVMA") is a veterinary's professional society. It recognizes other societies that represent various groups of veterinary medicine specialists. One such specialty is ACVO. AVMA recognizes no other group in the area of veterinary ophthalmology
 
 
 [3]
 All of the appellants are veterinarians. Dr. D.A. Rickards has practiced in Cleveland, Ohio since 1963. He sat for ACVO's written exam seven times and failed each time. Dr. Paul Belkin has practiced in St. Louis since 1952. His credentials were rejected by ACVO's Credential Committee in 1975. He has not resubmitted his credentials although invited to do so. Dr. M.A. Custer has practiced in San Diego since 1959, and Dr. John S. Sleasman has practiced in Washington since 1973. Neither Dr. Custer nor Dr. Sleasman has ever applied for ACVO membership
 
 
 [4]
 Fed.R.Civ.P. 41(b) provides in part that "[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a)."
 
 
 [5]
 Fed.R.Civ.P. 52(a) provides in part that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon .... Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."
 
 
 [6]
 15 U.S.C. Sec. 1 provides in part that "[e]very contract, combination ... or conspiracy, in restraint of trade or commerce among the several States ... is declared to be illegal."
 
 
 [7]
 15 U.S.C. Sec. 2 provides in part that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire ... to monopolize any part of the trade or commerce among the several States ... shall be deemed guilty of a felony ...."
 
 
 [8]
 Appellants' state-law claims under the California Business & Professions Code see, footnote 1, supra, must be rejected as well. The finding that appellees' conduct is reasonable under the Sherman Act precludes recovery under state law in this instance. See Bridge Corp. of America v. The American Contract Bridge League Inc., 428 F.2d 1365, 1371 (9th Cir.1970)